UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILLIAM BRYANT FAUST, IV AND                CIVIL ACTION
LORAINE FAUST


VERSUS                                       NO: 06-8470


STATE FARM FIRE AND CASUALTY                 SECTION: "R"(5)
COMPANY


<u>**ORDER AND REASONS**</u>

Before the Court is defendant State Farm Fire and Casualty Company's motion to dismiss under Rule 12(c) of the Federal Rules of Civil Procedure and plaintiffs' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  For the following reasons, the Court GRANTS in part and DENIES in part defendant's motion and DENIES plaintiffs' motion.


**I.    BACKGROUND**

Plaintiffs William Bryant Faust, IV and Lorraine Faust are Louisiana homeowners whose property sustained damages as a result of Hurricane Katrina.  Plaintiffs' home, which was located in Metairie, was insured under a homeowner's policy and a flood policy, both issued by defendant State Farm.  Plaintiffs assert

that the amount that they have received thus far from State Farm under both their homeowner's and flood policies has not fully compensated them for their covered losses.  The homeowner's policy contained coverage limits of $191,306 on the dwelling, $143,480 on contents, $19,131 on the dwelling extension, and actual loss of use.  The flood policy contained coverage limits of $240,000 on the dwelling and $20,000 on its contents.  To date, State Farm has paid plaintiffs $30,327.91 for damage to the dwelling and $200 for contents under their homeowner's policy, as well as $170,845.26 for damage to the dwelling and $20,000 for contents under their flood policy.  In sum, plaintiffs have received $221,373.17 under both policies.

Plaintiffs contend that they have been underpaid on their policies because their dwelling was determined to be a total loss in the aftermath of Hurricane Katrina.  Plaintiffs' home was ultimately demolished based on the recommendation of Jefferson Parish authorities.  In addition to their breach of insurance contract claims on both their homeowner's and flood policies, plaintiffs assert causes of action under La. Rev. Stat. §§ 22:658 and 22:1220 for State Farm's alleged arbitrary or capricious failure to timely pay their claim after it received satisfactory proof of loss.  They seek attorney's fees under Section 22:658, as well as general damages under Section 22:1220 for mental

anguish and loss of enjoyment of life.

State Farm now moves to dismiss plaintiffs' state-law based extra-contractual and tort claims under their flood policy and plaintiffs' claims under their homeowner's policy for nonpecuniary losses arising out of State Farm's alleged breach of contract.  Conversely, plaintiffs move for summary judgment on their breach of contract and penalties claims.  The Court rules on these motions as follows.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss under Rule 12

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss.  *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) ("The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).").  Therefore, the Court views the pleadings in a light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant.  *Youngblood v. Bender*, 2000 WL 1059782, at *1 (E.D. La. July 31, 2000).  If it appears beyond a reasonable doubt that the nonmovant can plead or prove no set of

3

facts that would entitle her to relief, the Court may grant judgment on the pleadings.  *See id.*

### B.   Summary Judgment

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue

4

exists.  *See Celotex*, 477 U.S. at 324.   The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial.  *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III. DISCUSSION**

    **A.   Defendant's Motion to Dismiss under Rule 12**

    State Farm moves for dismissal of two categories of plaintiffs' claims in this action: (1) plaintiffs' state-law based extra-contractual and tort claims asserted under their flood policy; and (2) plaintiffs' claims for nonpecuniary losses under their homeowner's policy.  The Court addresses each in turn.

    *1.   La. Rev. Stat. §§ 22:658 and 22:1220 Claims*

    Effective December 31, 2000, the Federal Emergency Management Agency added the following language to Article IX of the Standard Flood Insurance Policy:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, *et seq.*), and Federal common law.

44 C.F.R. pt. 61, App. A(1), Art. IX (2001).  Based on its holding in *Wright v. Allstate Ins. Co.*, 415 F.3d 384 (5th Cir.

5

2005), the Fifth Circuit recently held that this regulation properly puts into effect the authority of the National Flood Insurance Act to preempt state tort law claims arising from claims handling by a Write Your Own insurer.  *C.W. Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 345 (5th Cir. 2005). In *Gallup*, the Fifth Circuit found that bad faith adjustment claims under La. Rev. Stat. § 22:1220 were preempted by federal law.  *Id.*  Here, plaintiffs' claims under La. Rev. Stat. §§ 22:658 and 22:1220 under their flood policy arise solely from the alleged claims-handling actions of State Farm, which is a Write Your Own insurer under the National Flood Insurance Program.  The result in *Gallup* expressly prohibits such state law tort claims in this context.  Further, the cases cited by plaintiffs in their opposition brief are of no help, as they relate to suits brought against an adjuster by an insured, which is a factual situation not present in this action.  Plaintiffs therefore cannot state a claim under either La. Rev. Stat. §§ 22:658 and 22:1220 under their flood policy.  Those claims are dismissed.

     2.  *Claims for Nonpecuniary Losses under Homeowner's Policy*

As the Court recently held in *Weiss v. Allstate Ins. Co.*, La. Rev. Stat. § 22:1220 permits the recovery of general damages, including mental anguish, provided that these damages are proven.

2007 WL 1075921, at *8-9 (E.D. La. Apr. 9, 2007).  Under Section 22:1220(A), any insurer who breaches the duty of good faith and fair dealing "shall be liable for any damages sustained as a result of the breach."  La. Rev. Stat. § 22:1220(A).  Section 22:1220(B) then lists the specific, and exclusive, acts for which an insurer can be liable for damages and penalties for breach of the duty of good faith and fair dealing.  *See Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184, 188 (La. 1997) ("we believe that where, as here, the legislature lists specific prohibited acts, and couples that list with a concomitant scienter requirement, those acts and those alone are the intended targets of the damages and penalties provided").  These acts, which must be committed knowingly, are: misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue; failing to timely pay a settlement reduced to writing; denying coverage or attempting to settle a claim based on an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured; misleading a claimant as to the applicable prescriptive period; failing to timely pay the amount of any claim due any person insured by the contract after receipt of satisfactory proof of loss when such failure is arbitrary, capricious, or without probable cause; and failing to pay claims pursuant to La. Rev. Stat. 22:658.2 when such failure

is arbitrary, capricious, or without probable cause [added February 23, 2006]. La. Rev. Stat. § 22:1220 (B). Section 22:1220(C) then starts, "In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty . . . ." La. Rev. Stat. § 22:1220(C). Thus, by its plain terms, the statute establishes that if an insurer knowingly engages in one of the specified types of misconduct, the consequences are that the insurer is liable for the damages allowed by the statute, *i.e.*, the "general or special damages" that result from that conduct. The damages are not the amount due under the insurance contract but damages caused by the specified misconduct. *See Matter of Hannover Corp. of America*, 67 F.3d 70, 76 (5th Cir. 1995). As the Louisiana Supreme Court recently stated in a property damage case, under Section 22:1220, "the award of general or special damages, if requested, is mandatory . . . ." *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 860 So. 2d 1112, 1117 (La. 2003) (noting also that "[c]learly, Sultana is entitled to seek general or special damages from its insurer); *see also Felham Enterprises (Cayman) Ltd. v. Certain Underwriters at Lloyds*, 2005 WL 2050284, * 31 (E.D. La. Aug. 2, 2005) (Engelhardt, J.) (awarding general damages for a violation of Section 22:1220 in property damage case); *Clark v. McNabb*, 878 So. 2d 677, 686 (La. Ct. App. 2004) (affirming award of general

damages); *Holt v. Aetna Cas. & Sur. Co.*, 680 So. 2d 117, 132 (La. Ct. App. 1996) (permitting, but reducing, award of general damages).  Further, as the Louisiana Supreme Court has defined the term, general damages include "those which may not be fixed with any degree of pecuniary exactitude but, which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or lifestyle which cannot really be measured definitively in terms of money." *McGee v. A C And S, Inc.*, 933 So. 2d 770, 774 (La. 2006) (citing *Duncan v. Kansas City S. R.R.*, 773 so. 2d 670, 682 (La. 2000).

State Farm's reliance on La. Civ. Code art. 1998 for the well-established principle that nonpecuniary damages cannot be recovered for breach of contract when the contract is not intended to gratify a nonpecuniary interest is therefore misplaced. *See* La. Civ. Code art. 1998. Plaintiffs' claims for general damages such as emotional distress do not arise from a simple breach of their insurance contract.[1] Rather, they are based on the asserted violation of State Farm's statutory duty under Section 22:1220 in one or more of the specified ways. The

---

[1] The Court notes that Article 1998 does not foreclose the recovery of nonpecuniary damages, regardless of the nature of the contract, if the obligor intended through his failure to perform to aggrieve the feelings of the obligee.

prohibited acts set forth in Section 22:1220(B) amount to knowing and vexatious wrongdoing directed toward an insured.  The general and special damages award is thus aimed at, and limited to, a caliber of misconduct that goes well beyond an ordinary breach of contract.  If plaintiffs can prove that State Farm acted in bad faith by knowingly committing or performing one of these acts and that this conduct caused plaintiffs to suffer general or special damages, those damages are recoverable.  Thus, State Farm's motion to dismiss plaintiffs' claims for general damages is denied.[2]

**B.   Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment on the claims set forth in their amended petition, including additional compensation under their flood and homeowner's policies, as well as damages, penalties, and attorney's fees under La. Rev. Stat. §§ 22:658 and/or 22:1220.  The Court finds that summary judgment on these claims in favor of plaintiffs is inappropriate.  Plaintiffs' motion is based almost entirely on facts that remain in dispute, and thus are not proper grounds upon which to grant summary judgment.

---

[2] The Court, however, notes that plaintiffs concede in their opposition brief that they are no longer seeking damages for lost wages as a result of State Farm's alleged misconduct.

First, plaintiffs contend that their home was ultimately rendered a total loss by the combined effects of the wind and flooding from Hurricane Katrina, perils that were covered under their homeowner's and flood policies, respectively.  In support of this assertion, plaintiffs rely on an engineer's report produced by Pepper and Associates that states:

> [I]t is the Engineer's opinion that approximately 45% to 50% of the observed damage to the subject structure was caused by shifting of the structure, in response to sustained hurricane force winds and wind gusts.  The remaining 50% to 55% of observed damage to the subject structure was caused by buoyant uplift due to flooding . . . .  It is the Engineer's opinion that the combined overall damage to subject structure is approximately 75% to 80%.  It is the Engineer's opinion that the subject structure is structurally unsafe in its current condition and additionally may pose a health/public nuisance hazard.

(R. Doc. 29-13, at 3).  Plaintiffs further assert that photographs taken of the interior of their home before Katrina struck indicate that the structural damages to the home noted after the hurricane were not present at that time.  (R. Doc. 29-16).

In response, State Farm submits the report of Kevin Vanderbrook, an engineer with VECO Consulting, in which he opines that the extent of wind damage to this house as a result of Katrina "was very minimal and consisted primarily of damaged areas of roof shingles on the right side slope and rear slope.

11

These areas were not sufficiently damaged to cause significant water intrusion through the roof or ceiling . . . ." (R. Doc. 53-5, at 3). He further states that the "structure of this house was not shifted or damaged by wind forces from Hurricane Katrina in any way." (*Id.* at 4). He also opines that the structural integrity of the house "was unaffected by floods" from the hurricane. (*Id.*). Rather, it is Vanderbrook's opinion that "differential settlement" of the home's foundation over a period of time, not the wind and flooding of Katrina, led to the shifting of the plaintiffs' structure, and eventually its demolition. (*Id.*). State Farm therefore contends that it does not owe plaintiffs any more money under either their homeowner's or flood policies because such settlement damage is a non-covered peril under both policies.

Second, even if the Court could find on this record that plaintiffs' damages were caused by the covered perils of wind and flooding under their two policies, it would nevertheless be premature to determine the amount of uncompensated damages to which plaintiffs are entitled, as evidence of the amount of plaintiffs' total damages is disputed. Plaintiffs point to a Road Home Program document that shows the estimated pre-storm value of their home was $480,700 and that they sustained $318,801 in Katrina-related damages. (R. Doc. 29-18, at 5). On the other

12

hand, State Farm presents plaintiffs' signed proof of loss that was submitted along with their claim under their flood policy, in which they aver that the actual cash value of their home is $300,000, and the full cost of repair or replacement of their home and contents is $360,964.  (R. Doc. 53-19).  Moreover, State Farm's calculation of the replacement cost for plaintiffs' home is $199,280.40.  (R. Doc. 53-15).

In light of the conflicting expert reports and other documents submitted by the parties, the questions of what caused the structural damage to plaintiffs' home, to what extent, and to what amount are plaintiffs entitled under their policies are disputed issues of material fact.  As such, State Farm's liability, if any, under plaintiffs' homeowner's and flood policies cannot be resolved by the Court on a summary judgment motion.  Because the Court finds that summary judgment is inappropriate as to the underlying breach of contract claims, it is likewise improper to grant summary judgment on plaintiffs' claims under the penalty statutes, La. Rev. Stat. §§ 22:658 and 22:1220, for State Farm's alleged breach of the homeowner's policy.

Finally, given these disputed issues of fact, the Court finds that a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 that plaintiffs are

13

entitled to recover the damages requested in their state court petition is inappropriate on this record.


**IV.  CONCLUSION**

For the foregoing reasons, State Farm's motion to dismiss is GRANTED in part and DENIED in part and plaintiffs' motion for summary judgment, or alternatively for declaratory judgment, is DENIED.


New Orleans, Louisiana, this 20th day of April, 2007.


SARAH S. VANCE
UNITED STATES DISTRICT COURT